UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DIAMOND RESORTS
INTERNATIONAL, INC.; DIAMOND
RESORTS U.S. COLLECTION
DEVELOPMENT, LLC; DIAMOND
RESORTS HAWAII COLLECTION
DEVELOPMENT, LLC; and DIAMOND
RESORTS MANAGEMENT, INC.,

     Plaintiffs,

v.                                      Case No. 6:17-cv-1394-Orl-37DCI

AUSTIN N. AARONSON; and
AARONSON, AUSTIN, PA,

     Defendants.

_____

**ORDER**

This cause is before the Court on Defendants' Motion to Dismiss Complaint with

Prejudice (Doc. 21 ("**Motion**")) and Plaintiffs' response (Doc. 30).

**I.**     **BACKGROUND**

Plaintiffs are Las Vegas based timeshare developers managing more than 420

membership resorts worldwide. (Doc. 1, ¶¶ 1, 17–24.) Defendants Austin N. Aaronson

and Aaronson, Austin, PA (collectively, "**Defendants**") are an Orlando-based attorney

and his law firm focusing on soliciting Plaintiffs' timeshare members to become clients of

Defendants' services of freeing such members from financial obligations under their

purchase and financing contracts ("**Timeshare Contracts**"). (*Id.* ¶¶ 14, 15, 25.) To that

end, Plaintiffs allege that Defendants' advertising campaign weaves a false narrative of

Plaintiffs engaging in unlawful activity ("**Advertising**"). (*Id.* ¶¶ 2, 26, 29, 32–36.) Consequently: (1) timeshare members have ceased payments under their Timeshare Contracts; and (2) on some occasions, Plaintiffs have been subjected to baseless arbitration proceedings against them. (*Id.* ¶¶ 4, 31, 37.)

Seeking injunctive and monetary relief, Plaintiffs allege that Defendants are liable to them for: (1) violations of the Lanham Act ("**Count One**"); (2) tortious interference with a contractual relationship ("**Count Two**"); (3) trade libel ("**Count Three**"); (4) violations of Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**"), Florida Statute § 501.204(1) ("**Count Four**"); (5) malicious prosecution ("**Count Five**"); and (6) violations of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), 18 U.S.C. § 1962(c) ("**Count Seven**"), § 1962(a) ("**Count Eight**"), and § 1962(b) ("**Count Nine**").[1] (Doc. 1, ¶¶ 56–97, 102–148.)

Defendants lodge a plethora of reasons why the Court should dismiss the Complaint in its entirety and with prejudice. (Doc. 21.) Upon consideration, the Court is unpersuaded by the majority of their arguments. As such, the Motion is due to be granted in part and denied in part.

## II.   LEGAL STANDARDS

Under the minimum pleading requirements of the Federal Rules of Civil Procedure, plaintiffs must provide short and plain statements of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts. *See*

---

[1] Plaintiffs have withdrawn their abuse of process claim set forth in Count Six of the Complaint. (*See* Doc. 30, p. 20; *see also* Doc. 1, ¶¶ 98–101.)

Fed. R. Civ. P. 8(a), 8(d), & 10(b). If a complaint does not comport with these minimum pleading requirements, if it is plainly barred, or if it otherwise fails to set forth a plausible claim, then it is subject to dismissal under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Plausible claims must be founded on sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678; *see also Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015). In assessing the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See Iqbal*, 556 U.S. at 679; *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012). Courts do not consider other matters outside the four corners of the complaint, and they must: (1) disregard conclusory allegations, bald legal assertions, and formulaic recitation of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiff. *See Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir. 2016);[2] *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

## III.   ANALYSIS

To begin, Defendants argue that the Court should dismiss the entire action because Plaintiffs lack constitutional standing under Article III. (Doc. 21, pp. 4–5.) The Court rejects this argument. Article III standing requires that Plaintiffs sufficiently allege that they: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To satisfy this standard, Plaintiffs allege that they suffered "an injury to commercial and reputational interest based on [Defendants'] misrepresentation, false, and deceptive statements about [Plaintiffs]." (Doc. 1, ¶ 64.) Plaintiffs further maintain that through the Advertising they suffered injury because timeshare members, at Defendants' insistence, breached their Timeshare Contracts. (*See id.* ¶¶ 25–37, 61, 73.) Finally, Plaintiffs' alleged injuries are likely to be redressed by the relief they seek— monetary damages and an injunction—is likely to be redressed by a favorable decision from the Court. (*See id.* ¶¶ 37, 76.) Plaintiffs have thus sufficiently articulated Article III standing, and Defendants' contrary argument borders on frivolous. *See Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1290–91 (11th Cir. 2017). Having resolved this threshold jurisdictional issue, the Court turns to the sufficiency of Plaintiffs' federal and state-law claims.

**A.    Federal Claims**

**1.    Lanham Act Claim**

In Count One, Plaintiffs assert a claim for false advertising under Lanham Act.

(Doc. ¶¶ 56–68.) To plead a Lanham Act claim, a plaintiff must allege that:

> (1) the defendant's statements were false or misleading;
> (2) the statements deceived, or had the capacity to deceive,
> consumers; (3) the deception had a material effect on the
> consumers' purchasing decision; (4) the misrepresented
> service affects interstate commerce; and (5) the plaintiff has
> been, or likely will be, injured as a result of the false or
> misleading statement.

*Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012). Defendants contend that Count One fails because: (1) the Advertising is not "commercial advertising" under Lanham Act ("**Commercial Advertising Argument**"); (2) their Advertising is non-actionable opinion ("**Opinion Argument**"); and (3) Plaintiffs do not have statutory standing ("**Statutory Standing Argument**").

**a.    Commercial Advertising Argument**

The Lanham Act prescribes liability only for false "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Citing *Edward Lewis Tobinick, MD v. Novella*, Defendants identify four characteristics of "commercial advertising or promotion:

> (1) commercial speech; (2) by a defendant who is in
> commercial competition with plaintiff [("**Commercial
> Competition Prong**")]; (3) for the purpose of influencing
> consumers to buy defendant's goods or services[; and] (4) the
> representations . . . must be disseminated sufficiently to the

relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.[3]

848 F.3d 935, 950 (11th Cir. 2017) (quoting *Gordon & Breach Sci. Publishers S.A. v. Am. Ins. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994)), *cert. denied Tobinick v. Novella*, 138 S. Ct. 449 (2017).

Defendants posit that since they do not compete with Plaintiffs the Commercial Competition Prong fails. (Doc. 21, p. 9.) The fallacy of this argument is apparent from the authority cited in Defendants' Motion—*Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). (*Id.*) The U.S. Supreme Court recently ruled in *Lexmark* that a plaintiff need not show that a defendant was in commercial competition with plaintiff to have standing under the Lanham Act. 134 S. Ct. at 1394. According to *Lexmark*, where, as here, "a party claims reputational injury from disparagement, competition is not required for proximate cause; and that is true even if the defendant's aim was to harm its immediate competitors, and the plaintiff merely suffered collateral damage." *Id.* Citing *Lexmark*, at least two district courts have declined to dismiss Lanham Act claims based on challenges to the Commercial Competition Prong. *See, e.g., Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1278–80 (S.D. Fla. 2015), *aff'd* 848 F.3d at 939, *cert. denied* 138 S. Ct. 449; *Educ. Impact, Inc. v. Danielson*, No. 14-937(FLW)(LHG), 2015 WL 381332, at *13–14 (D.N.J. Jan. 28, 2015) Hence the Court rejects the Commercial Advertising Argument.

---

[3] Notably, *Tobinick* does not support Defendants' position. (Doc. 21, p. 9.) There, the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's Lanham Act false advertising claim because the speech at issue failed the first prong—commercial speech. 848 F.3d at 952. Apart from reciting the four-prong test, the *Tobinick* court did not address the Commercial Competition Prong. *Id.*

### b. Opinion Argument

Defendants next argue that their Advertising is not false or misleading, rather it is opinion or puffery. (Doc. 21, pp. 12–13.) This argument fails to appreciate that at the pleading stage, the Court accepts Plaintiffs' allegations as true. *Reese*, 678 F.3d at 1215. According to the Complaint, the Advertising "made material false and misleading statements," which have deceived Plaintiffs' timeshare members into believing that Plaintiffs have engaged in unlawful activity and caused them to stop making payments on their Timeshare Contracts. (Doc. 1, ¶¶ 29, 33–35, 59–62.) These allegations are sufficient to survive dismissal. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (holding that the Lanham Act applies to a statements that are either literally false or "literally true, but misleading"); *see also Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (holding that an opinion may be actionable under the Lanham Act "if it fairly implies a factual basis").  Thus, the Court rejects Defendants' Opinion Argument.

### c. Statutory Standing Argument

Finally, under their Statutory Standing Argument, Defendants posit that Plaintiffs have omitted the necessary allegations of injury and causation for their § 1125(a) claim. (Doc. 21, pp. 8–9.) The Court disagrees. Section 1125(a) "extends only to plaintiffs whose interests fall within the zone of interests protected" by the Lanham Act. *Lexmark*, 134 S. Ct. 1377. To that end, a false advertising claim under the Lanham Act requires that "a plaintiff . . . plead (and ultimately prove) an injury to a commercial interest in sales or

business reputation proximately caused by the defendant's misrepresentations." *Id.* at 1395.

First, Plaintiffs have sufficiently alleged that they are within the class of plaintiffs whom Congress authorized to sue under § 1125(a). Plaintiffs' alleged injuries—loss of sales and market share and reputational damage (*see* Doc. 1, ¶¶ 33–36, 61–65)—are the sort of commercial interests that the Lanham Act seeks to safeguard. *See Lexmark*, 134 S. Ct. at 1393. This satisfies statutory standing. *See id.*

Plaintiffs have also adequately alleged that their injuries were proximately caused by Defendants' misrepresentations. The sufficiency of proximate cause allegations turns on whether "the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* at 1390. When "a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Id.* at 1393. Here, Plaintiffs maintain that their reputation has been harmed by the Advertising which falsely states that Plaintiffs engage in unlawful conduct. (Doc. 1, ¶¶ 29, 33–36, 61.) As a result, the Advertising has: (1) "actually deceived or [has] the tendency to deceive [their] members"; and (2) caused specific timeshare members to cease payments on their Timeshare Contracts. (*Id.* ¶ 62.) Thus, the Court finds that the Complaint sufficiently alleges that Plaintiffs' injuries flow directly from Defendants' Advertising. *See Lexmark*, 134 S. Ct. at 1393. The Court rejects the Statutory Standing Argument, and finds that the Motion is due to be denied as to Count One.

### 2.    RICO Claims

Plaintiffs also lodge federal RICO claims in Counts Seven, Eight, and Nine under 18 U.S.C. §§ 1962(c), (a), and (b), respectively. (Doc. 1, ¶¶ 102–148). The RICO Act provides a private right of action for anyone injured in his business or property by a violation of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c). Sections 1962(a), (b), (c) impose liability on those who engage in a pattern of racketeering if they: (1) invest income derived from a pattern of racketeering activity of an enterprise engaged in interstate commerce (§ 1962(a)); (2) acquire or maintain, through a pattern of racketeering activity, any interest in or control over such an enterprise (§ 1962(b)); or (3) conduct or participate in the conduct of the affairs of such an enterprise through a pattern of racketeering activity (§ 1962(c)). *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017).

A "pattern of racketeering activity" is essential to the survival of a claim under any of the RICO provisions. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1264 (11th Cir. 2004). This essential requirement is met by factual allegations concerning three elements: (1) the defendant "committed two or more predicate acts within a ten-year time span [("**Predicate Acts Prong**")]; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrate criminal conduct of a *continuing* nature." Jackson, 372 F.3d at 1264–65 (emphasis in original). To satisfy the Predicate Acts Prong, a plaintiff must allege facts that support each statutory element of an act indictable under a number of federal laws set forth in § 1961(1), including 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1503(a) (obstruction of justice). *See Bridge v. Phx. Bond &*

*Indem. Co.*, 553 U.S. 639, 647 (2008); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004).

Plaintiffs allege that Defendants committed mail fraud, wire fraud, and obstruction of justice. (Doc. 1, ¶ 127) Defendants rejoin that, among other things, Plaintiffs have failed to satisfy the Predicate Acts Prong. (*See* Doc. 21, p. 24.) For the following reasons, the Court finds that Plaintiffs' predicate act allegations are deficient.

### a.      Obstruction of Justice

As to obstruction of justice, Plaintiffs invoke the omnibus clause of § 1503(a), which prohibits the following acts: "corruptly or by threats or force, or by any threatening letter or communication," influencing, obstructing, or impeding, or endeavoring "to influence, obstruct, or impede, the due administration of justice." To satisfy the statutory elements of this offense, a plaintiff must allege that: "(1) a judicial proceeding was pending; (2) the defendant had knowledge of the judicial proceeding; and (3) the defendant acted corruptly with the specific intent to influence, obstruct, or impede any juror or officer of the court in that judicial proceeding in its due administration of justice."[4] *United States v. Myers*, 524 F. App'x 479, 484 (11th Cir. 2013) (citing *United States v. Aguilar*, 515 U.S. 593, 599 (1995)).

Here, Plaintiffs allege that Defendants "filed and supported contrived legal claims with the wrongful intent or improper purpose of abusing the judicial process and impeding the due administration of justice in an effort to instill fear of liability to extort

---

[4] *See also United States v. Howard*, 569 F.2d 1331, 1336 n.9 (5th Cir. 1978).

settlement proceeds." (Doc. 1, ¶ 127(b).) So, Plaintiffs contend, they have sufficiently alleged the statutory requirements of § 1503. (Doc. 30, p. 23.) Plaintiffs' argument is twice flawed.

First, there is no binding authority suggesting that § 1503(a) extends to arbitration proceedings. Indeed, the Eleventh Circuit has limited its application to federal judicial proceedings. *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003); *see also Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 202 F. Supp. 2d 1339, 1351 (S.D. Fla. 2002) (holding that obstruction statute did not apply to actions taken in state court proceedings). The Court declines to broaden the application of this criminal statute, especially in the civil context.

Second, even if a § 1503(a) violation could be based on an arbitration, the necessity of a *pending* judicial proceeding precludes reliance on the act of *initiating* that proceeding as itself obstructive under § 1503. *See Myers*, 524 F. App'x at 484. True, "the omnibus clause is broad enough to cover any act committed corruptly, in an endeavor to impede or obstruct justice." *United States v. Brand*, 775 F.2d 1460, 1465 (11th Cir. 1985). But Plaintiffs provide no support for the broad reading they urge—that is, that an opponent's initiation of what amounts to, in Plaintiffs' view, frivolous arbitration proceedings equates to corrupt conduct "capable of producing an effect that prevents justice from being duly administered." *See United States v. Silverman*, 745 F.2d 1386, 1393 (11th Cir. 1984). Hence Defendants' initiation of arbitration proceedings is legally insufficient to support a § 1503(a) violation and cannot serve as the basis for a RICO predicate act.

### b.      Mail and Wire Fraud

Next, Plaintiffs allege that Defendants engaged in predicate acts of mail and wire fraud. (Doc. 1, ¶¶ 127(a), 129.) For these allegations to suffice, Plaintiffs must allege at least two predicate acts with particularity. *See Raney*, 370 F.3d at 1087; *see also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (holding that civil RICO claims are "essentially a certain breed of fraud" and must satisfy the heightened pleading standard under Rule 9(b)). The mail and wire fraud statutes are essentially identical and require allegations that: (1) a defendant intentionally participated in a scheme or artifice to defraud another of money or property ("**Scheme to Defraud Element**"); and (2) a defendant used or caused to be used the mails or wires in furtherance of the scheme or artifice. *See United States v. Ward*, 486 F.3d 1212, 1221–22 (11th Cir. 2007); *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002).

The Complaint alleges that Defendants engaged in a solicitation scheme comprised of: (1) the Advertising displayed on Defendants' website that targeted Plaintiffs' timeshare members; and (2) arbitration demands that Defendants mailed, faxed, and emailed to Plaintiffs that contained the same false statements as the Advertising ("**Arbitration Demands**"). (Doc. 1, ¶¶ 105, 107, 127(a), 129.)

Although a "scheme to defraud" under §§ 1341 and 1343 is not statutorily defined, to "defraud" has been judicially defined as "the deprivation of something of value by trick, deceit, chicane, or overreaching." *United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011) (quoting *Pendergraft*, 297 F.3d at 1208–09). Schemes to defraud differ from schemes to deceive, and only schemes to defraud implicate the mail and wire fraud

statutes. *See United States v. Takhalov*, 827 F.3d 1307, 1312–13 (11th Cir. 2016), *opinion modified on other grounds on denial of reh'g* 838 F.3d 1168 (11th Cir. 2016). To constitute a scheme to defraud, a defendant must intend to harm the victim by obtaining something he is not entitled to and lying about the nature of the bargain itself. *Id.*

As applied here, Plaintiffs allegations with respect to the Arbitration Demands are deficient. Merely sending the Arbitration Demands that contain falsehoods does not satisfy the Scheme to Defraud Element because Plaintiffs have failed to allege how the Arbitration Demands deprived them of something of value by trick or deceit. *See id.* at 1313; *see also Bradley*, 644 F.3d at 1240. Surely, Plaintiffs disagree with the characterizations made in the Arbitration Demands. (*See* Doc. 30, p. 22.) But false statements alone do not constitute a scheme to defraud. *Takhalov*, 827 F.3d at 1314 (noting that schemes to defraud violate the mail and wire fraud statutes when they "depend for their completion on a misrepresentation of an essential element of the bargain"). At best then, the Arbitration Demands simply led to Plaintiffs engaging in subsequent arbitrations that might not have otherwise occurred — but such conduct does not implicate the mail and wire fraud statutes. *See id*. This is true even if Plaintiffs were spurred into action only because the Arbitration Demands reprised the falsehoods contained in the Advertising. *See id.* at 1313.

Second, in the Court's view, Plaintiffs are attempting to dress up their state-law malicious prosecution claim in RICO clothing. But, absent a "scheme to defraud," the "mailing of litigation documents, even perjurious ones, [does] not violate" the mail and wire fraud statutes. *See Pendergraft*, 297 F.3d at 1209 (noting that a number of courts have

rejected the possibility that "serving litigation documents by mail constitutes mail fraud"). Indeed, "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate [the American] legal system." *Id.* at 1208.[5]

Without alleging the predicate acts of mail and wire fraud through the Arbitration Demands, Plaintiffs' RICO claims rest on a single predicate act—the Advertising. As two predicate acts are required, Counts Seven, Eight, and Nine are due to be dismissed. *See* 18 U.S.C. § 1961(5) (providing that a pattern of racketeering requires at least two predicate acts).

## B.      State Law Claims

### 1.      Litigation Privilege

Defendants seek to dismiss Plaintiffs' state-law claims—Counts Two through Five based on Florida's litigation privilege. (Doc. 21, pp. 5–7) Under Florida law, statements or acts are provided absolute immunity under the litigation privilege if they are: (1) made or committed in the course of judicial or quasi-judicial proceedings; and (2) are "connected with, or relevant or material to, the cause in hand or subject of inquiry." *DelMonico v. Traynor*, 116 So. 3d 1205, 1212 (Fla. 2013) (quoting *Myers v. Hodges*, 44 So. 357, 361 (1907)); *accord Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380,

---

[5] Even if sending the Arbitration Demands constituted mail and wire fraud, Plaintiffs' allegations with respect to this predicate act fail to satisfy Rule 9(b). Apart from baldly asserting that Arbitration Demands reassert the false representations in the Advertising (Doc. 1, ¶¶ 107, 108), the Complaint is devoid of any specifics pertaining to the precise statements or misrepresentations or the precise time, place and person responsible for the statements and misrepresentations. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

383–84 (Fla. 2007); *Kidwell v. Gen. Motors Corp.*, 975 So. 2d 503, 505 (Fla. 2d DCA 2007) (holding that an arbitration proceeding "is a judicial or quasi-judicial proceeding" for purposes of the litigation privilege). This privilege extends to statutory and common law causes of action, immunizing conduct undertaken during litigation and "conduct that is 'necessarily preliminary' to a judicial proceeding." *Fridovich v. Fridovich*, 598 So. 2d 65, 66 (Fla. 1992); *see also Echevarria*, 950 So. 2d at 380–81.

The "necessarily preliminary" standard circumscribes the privilege, ensuring that "the conduct shielded from liability is really of a kind that can be regarded as having been undertaken in the course of a judicial proceeding and not conduct undertaken separately from it." *AGM Invs., LLC v. Bus. Law Grp., PA*, 219 So. 3d 920, 924 (Fla. 2d DCA 2017). Conduct that is "necessarily preliminary" to a judicial proceeding is confined to pre-suit communications that are a statutory or contractual condition precedent to suit. *See, e.g., Pledger v. Burnup & Sims, Inc.*, 432 So. 2d 1323, 1327 (Fla. 4th DCA 1983) (declining to extend absolute immunity to pre-litigation settlement efforts); *see also Trent v. Mortg. Elec. Registration Sys., Inc.* 618 F.Supp.2d 1356, 1361 (M.D. Fla. 2007) (declining to extend the litigation privilege to other pre-suit communications), *aff'd* 288 F. App'x 571 (11th Cir. 2008).

Defendants argue that their legal services rendered in bringing arbitration proceedings against Plaintiffs are protected under the litigation privilege. (Doc. 21, p. 7.) In so arguing, they misunderstand Plaintiffs' tortious interference, trade libel, and FDUTPA claims, all of which arise out of the Advertising. (*See* Doc. 1, ¶¶ 72, 80, 87.) Contrary to Defendants' argument, the Advertising was not required by, permitted by,

or even related to the subsequent arbitration proceedings. *See AGM Invs., LLC*, 219 So. 3d at 924. To hold otherwise would afford them "absolute exemption from liability" for their allegedly false and deceptive advertising that was "wholly and entirely outside of, and having no connection with" the arbitration proceedings. *Myers*, 44 So. at 361. Hence, at the pleading stage, the Court must reject Defendants' litigation privilege argument.[6] So the Court turns now to the sufficiency of these claims.

### 2.    Tortious Interference with Contractual Relationship

In Count Two, Plaintiffs assert a claim for tortious interference with contractual relations. (Doc. 1, ¶¶ 69–76.) To sufficiently plead such a claim under Florida law, a plaintiff must allege that: (1) a contract exists; (2) the defendant had knowledge of the contract; (3) the defendant intentionally procured a breach of the contract; (4) there is no justification or privilege for such breach; and (5) the plaintiff suffered damages from the breach. *Johns Enters. of Jacksonville, Inc. v. FPL Grp.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)). Further, a plaintiff must allege that the defendant is a third-party—that is, not a party to the contract or an agent of a contracting party. *Abruzzo v. Haller*, 603 So. 2d 1338, 1339–41 (Fla. 1st DCA 1992)

---

[6] Florida's litigation privilege is an affirmative defense. *Jackson*, F.3d at 1277 (citing *Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*, 810 So. 2d 996, 998 (Fla. 2d DCA 2002)). Affirmative defenses are not usually considered at the pleading stage unless "the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988) (quoting *Evans v. Parker*, 440 So. 2d 640, 641 (Fla. 1st DCA 1983)). The conclusive applicability of the litigation privilege does not unequivocally appear on the face of the Complaint.

(internal quotations omitted). An agent of a party to the contract is not a third party when the agent is "acting within his capacity and scope as an agent." *Id.* at 1341.

In Defendants' view, the tortious interference claim relates only to their rendering of legal services to Plaintiffs' timeshare members. (Doc. 21, p. 14.) With this, Defendants contend that as counsel for Plaintiffs' timeshare members, they are agents who cannot be considered a "third party." (*Id.* at 14–15.) Defendants are wrong.

Plaintiffs have sufficiently alleged that Defendants tortiously interfered with Plaintiffs' Timeshare Contracts. In doing so, they allege that before Defendants allegedly became agents of the timeshare members, Defendants targeted and "lure[ed] [Plaintiffs'] timeshare members with videos proclaiming 'fraud.'" (Doc. 1, ¶¶ 29, 72.) According to Plaintiffs, "the net effect of [Defendants'] marketing and solicitations is the deceptive and false impression that [Plaintiffs] engage[] in unlawful and fraudulent conduct" in an effort to get Plaintiffs' timeshare members to hire them "after which [Defendants] induce[d] them to breach their contractual obligations." (*Id.* ¶¶ 36, 73–74.) The allegations of tortious interference are plainly directed at the Advertising, not Defendants' representation of Plaintiffs' timeshare members. (*See id.* ¶¶ 25–36.) Accordingly, at the pleading stage, the Court finds that Defendants are third parties to the Timeshare Contracts, and Plaintiffs otherwise sufficiently plead this claim.

### 3.    Trade Libel

Plaintiffs next assert a claim for trade libel. To state a valid claim for trade libel under Florida law, a plaintiff must allege: (1) a falsehood; (2) that has been published or communicated to a third person; (3) when a defendant-publisher knows or reasonably

should know that it will likely result in inducing others not to deal with plaintiff; (4) the falsehood actually plays a material and substantial part in inducing others not to deal with plaintiff; and (5) special damages proximately result of the published falsehood ("**Special Damages Element**"). *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984).

Defendants argue that this claim fails because Plaintiffs have not alleged a falsehood and special damages. (Doc. 21, p. 16.) Not so. As to falsity, Plaintiffs allege that the Advertising falsely accuses Plaintiffs of engaging in unlawful activity to secure timeshare members as clients. (*See* Doc. 1, ¶¶ 25, 33–36.) This satisfies the falsehood element.

With respect to the Special Damages Element, Defendants contend that the Complaint lacks specificity and fails to comport with Rule 9(g), which requires that items of "special damages" be "specifically stated." (Doc. 21, p. 16); *Nat'l Numismatic Certification, LLC v. eBay, Inc.*, No. 6:08-cv-42-Orl-19GJK, 2008 WL 2704404, at *20 (M.D. Fla. Jul. 8, 2008) (noting that Florida law requires a trade libel claim to prove special damages and, as such, Rule 9(g) applies). To satisfy this heightened pleading standard, a plaintiff must plead a pecuniary loss that has been realized or liquidated, such as lost sales. *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999); *Collier Cty. Publ'g, Co. v. Chapman*, 318 So. 2d 492, 495 (Fla. 2d DCA 1975). In doing so, a plaintiff must establish more than general pecuniary harm. *Salit*, 742 So. 2d at 388.

In their Complaint, Plaintiffs allege that as a result of the Advertising they have "suffered great loss of custom, and [have] been deprived of great gains and profits, which otherwise [they] would have made" in an amount exceeding five million dollars. (Doc. 1, ¶ 83.) Plaintiffs argue that the Complaint more than satisfies Rule 9(g) and details three kinds of pecuniary loss: (1) the costs of arbitrations; (2) the costs of defending arbitrations; and (3) the unpaid promissory notes. (Doc. 30, p. 16 (citing Doc. 1, ¶¶ 38–51 (describing six examples of arbitration proceedings involving Plaintiffs' timeshare members)).) Plaintiffs further allege that they "incurred litigation expenses," including arbitration forum fees, arbitrator compensation, attorney fees and costs and have lost contractual fees that timeshare members are obligated to pay. (Doc. 1 ¶¶ 37, 52.)

The Court finds that these allegations satisfy Rule 9(g) in that Defendants are adequately informed of the nature of Plaintiffs' trade libel damages. *See Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962)[7] (holding that the purpose of Rule 9(g)'s specificity requirement is "to inform defending parties of the nature of the damages claimed in order to avoid surprise"); *Italiano v. Jones Chems., Inc.*, 908 F. Supp. 904, 907 (M.D. Fla. 1995) ("Rule 9(g) requires no more than a specific statement that allows Defendants to prepare a responsive pleading and begin their defense."). Hence the Motion is due to be denied as to Count Three.

---

[7] The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding on this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

4.    **FDUTPA**

In Count Four, Plaintiffs assert a FDUTPA claim. (Doc. 1, ¶¶ 84–89.) FDUTPA declares unlawful "unfair or deceptive acts or practices" committed "in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A FDUTPA claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 851 So. 2d 860, 869 (Fla. 2d DCA 2006)). Defendants assert that the Court should dismiss the FDUTPA claim because: (1) it fails Rule 9(b)'s heightened pleading standard; and (2) it is conclusory in nature and fails to satisfy minimum pleading standards. (Doc. 21, pp. 17–18.)

Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." District courts within the Eleventh Circuit are divided as to whether this heightened pleading standard applies to FDUTPA claims. *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1227 (M.D. Fla. 2017); *Finerman v. Marriott Vacations Worldwide Corp.*, No. 3:14-cv-1154-J-32MCR, 2015 WL 5440611, at *2 (M.D. Fla. Sept. 15, 2015) (collecting cases).

The Court is not persuaded that Plaintiffs' FDUTPA claim rests on fraud allegations, so Rule 9(b) is inapplicable. But even if Rule 9(b) applies, the Complaint sufficiently identifies and specifies the Advertising that Plaintiffs contend is false and deceptive. (*See* Doc. 1, ¶¶ 32–35.) Plaintiffs' FDUTPA claim also satisfies minimum pleading requirements. As alleged, Defendants have engaged in unfair and deceptive

practices in trade or commerce by producing the Advertising. (Doc. 1, ¶¶ 32–35, 85, 87.) Such conduct implicates FDUTPA. *See* Fla. Stat. § 501.203(8) (including advertising in the definition for "trade or commerce"). Plaintiffs further maintain that the Advertising has misled its timeshare members into believing that Plaintiffs have engaged in illegal conduct. (Doc. 1, ¶¶ 61–63, 84.) So causation is adequately pled. With respect to actual damages, the Complaint further identifies the loss of maintenance and other fees that Plaintiffs' timeshare members were obligated to pay under the Timeshare Contracts. (*Id.* ¶¶ 37, 89.) This is sufficient to withstand dismissal.

### 5. Malicious Prosecution

In Count Five, Plaintiffs assert a claim for malicious prosecution based on Defendants having instituted arbitration proceedings against Plaintiffs on behalf of Plaintiffs' timeshare members. (Doc. 1, ¶¶ 90–97.) This tort arises under Florida law where, among other things, an original judicial proceeding against the present plaintiff was commenced or continued. *Alamo Rent–A–Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). Defendants posit that this element is not met because the arbitration proceedings are not "judicial proceedings." (Doc. 21, p. 19.) Florida law is silent as to this question. *See Fla. Lifestyles Realty, Inc. v. Goodwin*, 917 So. 2d 1060 (Fla. 2d DCA 2006) (declining to resolve the question of whether an arbitration proceeding "is sufficiently similar to a judicial proceeding" in the context of a malicious prosecution claim). Plaintiffs rejoin that the absence of such authority leans in their favor.[8]

---

[8] When required to interpret Florida law, a district court looks "first for case precedent from the Florida Supreme Court." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,

Absent specific decisions from the Florida Supreme Court or intermediate appellate courts on the arbitration issue, the Court notes that malicious prosecution claims are generally disfavored under Florida law. *Cent. Fla. Mach. Co. v. Williams*, 424 So. 2d 201, 202 (Fla. 2d DCA 1983). Further, other jurisdictions have rejected malicious prosecution claims based on arbitration proceedings. *See, e.g.*, *Brennan v. Tremco Inc.*, 20 P.3d 1086, 1088 (Cal. 2001) (holding that contractual arbitration cannot support a claim for malicious prosecution because it would impermissibly expand derivate tort remedies and interfere with the parties voluntarily choosing to resolve disputes by binding, private arbitration). Under the circumstances, the Court cannot find that the Florida Supreme Court would expand this claim to arbitration proceedings.

Plaintiffs contend that they are "entitled to amend." (Doc. 30, p. 25.) Where a "complaint as amended is still subject to dismissal," leave to amend would be futile. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (internal citations omitted) (affirming the denial of leave to amend based on futility where the plaintiff sought to amend a state-law breach of contract claim that was insufficient as a matter of law). As the Court finds no basis under Florida law for Plaintiffs' malicious prosecution claim, Count Five is due to be dismissed with prejudice.

## C.     Injunctive Relief

Finally, in Counts One, Two, and Four Plaintiffs request preliminary injunctive

---

746 F.3d 1008, 1021 (11th Cir. 2014) Where there is none, a district court is "bound to adhere to decisions of the state intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Id.* (quoting *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985) (per curiam)).

relief. (Doc. 1, pp. 18, 21, 25.) These requests are procedurally improper under Rule 65 and Local Rules 4.05 and 4.06, which require that requests for a preliminary injunction must be made through a separate motion that addresses the prerequisites for that relief. *See Gunder's Auto Cent. v. State Farm Ins.*, 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009), *aff'd* 422 F. App'x 819 (11th Cir. 2011). Therefore, the portions of Counts One, Two, and Four that seek a preliminary injunction are due to be dismissed.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Complaint with Prejudice (Doc. 21) is **GRANTED IN PART AND DENIED IN PART**.

    a. Count Five of the Complaint (Doc. 1, ¶¶ 90–97) is **DISMISSED WITH PREJUDICE**.

    b. Counts Seven, Eight, and Nine of the Complaint (Doc. 1, ¶¶ 102–148) are **DISMISSED WITHOUT PREJUDICE**.

    c. The Court **DISMISSES WITHOUT PREJUDICE** the portions of Counts One, Two, and Four that seek a preliminary injunction.

    d. In all other respects, the Motion is **DENIED**.

2. On or before Thursday, **February 8, 2018**, Plaintiffs may file an amended complaint that remedies the deficiencies identified in this Order. Failure to timely respond will result in closure of this case without further notice.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 26, 2018.

-23-



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record